### In re DUFFY's ESTATE.

### In re KARGE.

*(Supreme Court, General Term, First Department. April 14, 1892.)*

EXECUTORS—SALE OF REALTY TO PAY DEBTS.

A will provided that, "after my lawful debts * * * are paid, I give, devise, and bequeath all my estate to my executors, hereinafter named, and direct them to convert the same into money as soon after my death as possible, giving and granting unto my said executors full power and authority to dispose of the same at public and private sale." Then followed provisions directing the disposal of the proceeds by the executors. *Held*, that the terms of the will included no power to sell for debts, nor was the real estate charged with the payment of them, and, the power to sell conferred on the executors for the purposes named in the will being postponed until after payment of testator's debts, an application to the surrogate, made by the creditor for the sale of the realty, was properly granted.

Appeal from surrogate's court, New York county.

Application by Ladislas Karge, as a creditor of Michael J. Duffy, deceased, to mortgage, lease, or sell the real property of decedent for the payment of his debts. From an order of the surrogate granting the application the executors appeal. Affirmed.

The will of decedent is as follows: "In the name of God, amen. I, Michael J. Duffy, of the city of New York, being of sound and disposing mind and memory, and considering the uncertainty of this life, do make, publish, and declare this to be my last will and testament, as follows: *First.* After

my lawful debts and those of my brother, the late John J. Duffy, D. D., are paid, I give, devise, and bequeath all my estate to my executors hereinafter named, and direct them to convert the same into money as soon after my death as possible, giving and granting unto my said executors full power and authority to sell and dispose of the same at public or private sale, as they may deem best; and out of the proceeds thereof it is my will, and I hereby direct, that they make the following disposition, to wit: (1) That they invest the sum of six thousand ($6,000) dollars in first bonds and mortgages of property in the city of New York, and pay the income thereof to my sister Julia Duffy. At her death it is my will that the said principal sum of six thousand dollars shall pass to and become part of my residuary estate. (2) That they invest the sum of six thousand ($6,000) dollars in first bonds and mortgages of property in the city of New York, and to pay the income thereof to my sister Alice McAtamany. At her death it is my will that the said principal sum of six thousand dollars shall pass to and become part of my residuary estate. (3) That said executors pay over the sum of six thousand ($6,000) dollars to my sister Eliza McAtamany, wife of John McAtamany. (4) That said executors pay over to Henry A. Brann, counselor at law, the sum of two thousand ($2,000) dollars. This bequest is made because of the fact that for eight years prior to the death of my beloved brother the Rev. John J. Duffy, D. D., he was his confidential adviser, and rendered him professional services for which he received no compensation. I recommend my sister Eliza McAtamany to employ said Henry A. Brann as her attorney. (5) That said executors pay over to the Rev. Henry A. Brann, D. D., the sum of two thousand five hundred ($2,500) dollars, and I request the said Rev. Henry A. Brann, D. D., to say masses for the repose of the souls of my father, Constantine Duffy, my mother, Bridget Duffy, my brother Patrick Duffy, my sister Bridget Duffy, and my brother the Rev. John J. Duffy, D. D., and myself. (6) All the rest, residue, and remainder of my estate I direct my executors to pay over to my sister Eliza McAtamany, wife of John McAtamany. My said sister Eliza knows my wishes in respect to the erection of a suitable memorial to the memory of our beloved brother the Rev. John J. Duffy, D. D., and I have full confidence that she will so far respect those wishes as to carry out the same. *Second.* I hereby make, constitute, and appoint my sister Eliza McAtamany the executrix, and John B. Johnson, real-estate broker, of the city of New York, executor, of this my last will and testament. *Third.* I hereby revoke all former wills by me made. *Fourth.* I hereby direct my executors to continue the litigation in which Mary McShane is plaintiff and myself the defendant. That litigation I conceive to be a wicked attempt to defeat the express purposes and directions of my dead brother, the Rev. John J. Duffy, D. D., and, so far as I can control the matter, I intend that those wishes shall prevail, if they can be made to by continuing the pending suit. The sole conditions upon which I am willing that such litigation should be brought to an end are fully set forth in a paper signed by me on the 26th of January, 1891, in the possession of my attorney, L. Karge, of 239 Broadway, New York."

Surrogate RANSOM in granting the application to sell decedent's real estate for the payment of his debt, delivered the following opinion: "Decedent died in February, 1891, leaving a will, which was duly admitted to probate, and letters testamentary issued to John B. Johnson and Eliza A. McAtamany. The personal property of decedent is insufficient to pay his debts. The respondent executrix opposes the application, on the ground that the will worked an equitable conversion of the real estate as of the time of decedent's death, the proceeds of which can be applied to the payment of his debts. The primary question is whether, by the terms of the will, the debts were charged upon the realty. The will provides: '*First.* After my lawful debts and those of my brother * * * are paid, I give, devise, and bequeath all my estate to my executors, hereinafter named, and direct them to convert the same into

money as soon after my death as possible, giving and granting unto my said executors full power and authority to sell and dispose of the same at public or private sale, as they may deem best. And out of the proceeds thereof it is my will, and I hereby direct, * * *.' Then follow five provisions directing the executors to dispose of the proceeds arising from the sale of the real estate. The provision in the will upon which the claim that the debts are charged upon the real estate is based, is, 'after my lawful debts * * * are paid.' These words, in themselves, do not show an intention to charge the realty with the payment thereof. *In re City of Rochester*, 110 N Y. 159, 17 N. E. Rep. 740; *Clift* v. *Moses*, 116 N. Y. 144, 22 N. E. Rep. 393; *In re Bingham*, 127 N. Y. 296, 27 N. E. Rep. 1055. The case of *Greenland* v. *Waddell*, 116 N. Y. 234, 22 N. E. Rep. 367, does not apply to the question under consideration. That case does not pretend to dispose of the rights of creditors to maintain proceedings in a surrogate's court to sell lands of testator for payment of debts. The court says in the same report in the case of *Clift* v. *Moses, supra*, (page 155, 116 N. Y., and page 395, 22 N. E. Rep.,) that 'debts and legacies stand upon a different basis, and, consequently, words that would indicate an intention to charge one upon real estate might not convey any such intention as to the other.' The second point is whether the will worked such an equitable conversion, so that at the time of decedent's death there was no realty against which creditors could proceed under the statute. Sections 2749, 2750, Code Civil Proc. The only conversion that could be worked is by the power of sale, and for the purpose only of applying the proceeds to the setting up of the trusts and the payment of legacies, and not for general purposes; and the proceeds could not be applied to the payment of debts, but only to the purposes specified in the will. *In re McComb*, 117 N. Y. 378, 22 N. E. Rep. 1070; *Sweeney* v. *Warren*, 127 N. Y. 426, 28 N. E. Rep. 413. Application granted."

Argued before VAN BRUNT, P. J., and O'BRIEN and ANDREWS, JJ.

*Bliss & Schley*, for appellants. *F. A. Card*, for respondent.

PER CURIAM. Although we think that it is probable that the right to maintain this appeal does not exist, yet in view of the conclusion at which we have arrived, and the fact that it involves the settlement of an estate, we have concluded to pass upon the merits. In determining the right of the surrogate to make the order appealed from, resort must be had to the will of Michael Duffy, for the purpose of ascertaining whether or not the same contains a general power of sale, or whether the real estate was expressly charged with the payment of debts, or whether the property is subject to a valid power of sale for the payment of debts. If such power existed or was given to the executors, then resort could not be had to a proceeding of this kind to sell the real estate for the payment of debts. We think, however, that not only is no such power as suggested given to the executors, but that, on the contrary, the right of the executors to sell for any purpose, except those specified in the will, (which does not include a right to sell for the purpose of paying debts,) is expressly excluded. The testator having limited the executors' power to sell to a time subsequent to the happening of the event of the payment of the debts of himself and his brother, the construction sought for would result in the court giving a power of sale prior to the time fixed by the testator. The power of sale is not a mere naked power, but the whole real estate, after the payment of these debts, is devised to the executors for the purpose of sale and distribution among the legatees mentioned in the will. The order should be affirmed, with costs.